**LIGHTING BY DESIGN, INC., Plaintiff,**

v.

**YODER, Defendant.**

2008-Ohio-2692.]

Canton Municipal Court,
Stark County, Ohio.

No. 2007 CVF 2327.

Decided March 20, 2008.

Robert E. Soles Jr., for plaintiff.

Christopher J. Niekamp, for North Akron Savings Bank.

---

BELDEN, Judge.

{¶ 1} The plaintiff, Lighting by Design, Inc. ("Lighting"), seeks an order from this court finding the garnishee, North Akron Savings Bank ("NASB") in contempt for failing to hold garnished funds in a suspense account subject to an order of this court directing payment. NASB argues that it did not disobey any order of this court, but complied with contractual obligations to its borrower. NASB asks this court for sanctions and attorney fees pursuant to Civ.R. 11.

{¶ 2} This quarrel arises out of a judgment obtained by Lighting against the defendant, Bob Yoder, individually and doing business as Bob Yoder Construction. The salient facts are not in dispute. Lighting obtained a default judgment for $9,786.12 from this court on September 13, 2007. The judgment was for a breach of contract for services and supplies sold to Yoder for his business. Bob Yoder Construction was in the business of constructing homes.

{¶ 3} On October 23, 2007, Lighting filed an affidavit for garnishment of funds being held by NASB on a construction loan for a home Yoder was building (or had built) for one of NASB's borrowers. The court ordered NASB "to hold safely anything of value that belongs to [Yoder] and that has to be paid to the court, * * *, until further order of the court."

{¶ 4} NASB filed its answer to the garnishment, indicating that it held $62,793.41 of funds of Yoder in a construction-loan account. The bank further stated: "The funds are being segregated in an unfinished business account which pays a percentage of funds as work is completed. Thus the funds in this account

may change if work is deficient, any mechanic's liens are filed, or competing garnishments are filed." The answer goes on to say: "Since the full amount owed to Bob Yoder individually and dba Bob Yoder Construction has not been liquidated, North American Savings Bank shall hold these funds in a suspense account or until this Court issues an order addressing the issues and directing payment."

{¶ 5} The next line of the answer, prescribed by the statutory language,[1] orders the garnishee "Do not dispose of that money, property, or credits or give them to anyone else until further order of the court."

{¶ 6} On January 3, 2008, NASB amended its answer to reflect that the amount of money then currently on balance in the construction-loan account was $762.43. The answer goes on to explain that it paid off several subcontractors as it claims the bank was obligated to do under the terms of its commercial-loan agreement. NASB further states that the amount due to Yoder was still not liquidated. (As it turns out, another creditor had filed an earlier garnishment against Yoder on this construction loan account, and it eventually collected the last $762.43.)

{¶ 7} Lighting then brought this contempt motion against NASB, arguing that NASB's disbursement of the funds in the construction-loan account amounted to disobedience of this court's order. NASB argues that the construction fund was not really property of the judgment debtor, in that it was never determined that there was an amount due to Yoder, as opposed to his subcontractors.

{¶ 8} Not much in the law of garnishments can be considered controversial, but the question of what may constitute "money, property, or credits" in the possession or under the control of the judgment debtor has generated its fair share of litigation. More than 50 years ago, the general test for whether a garnishee had to release funds or property was whether or not the judgment debtor could sue the garnishee for their release. "The most comprehensive test of liability to garnishee process is whether or not the person sought to be charged could have been sued by the defendant."[2] Ohio courts recognized that this was "not an infallible or universal test. There are cases where, because of the character of the persons or the nature of the property, the test would be inappropriate."[3] Courts have also looked at the legal relationship between parties, such as whether the garnishee is a trustee of the judgment debtor,[4] or

---

1. See R.C. 2716.13(B).

2. 38 Corpus Juris Secundum, 227, Section 26, quoted in *Marquis v. New York Life Ins. Co.* (1952), 92 Ohio App. 389, 396, 48 O.O. 354, 108 N.E.2d 227.

3. *Marquis.*

4. *Goralsky v. Taylor* (1991), 59 Ohio St.3d 197, 571 N.E.2d 720.

held funds provided by a surety.[5]

{¶ 9} The "ability-to-sue-on-the-debt test" (as coined by the Washington County Court of Appeals [6]), nevertheless, seems to be pressed into service by most courts when the issue whether a third-person's property can be garnished arises. The potential right of the judgment debtor to sue for the funds depends on what right he had to do so at the time of service of the garnishment process. As stated by one court:

> The rationale behind this rule is that a valid, collectible debt due and owing to the debtor must exist at the time of the garnishment. Because the creditor's rights to the funds are derived entirely from the debtor, his rights to the funds can be no greater than the debtor's. It would be manifestly unfair to the garnishee bank to be held liable for payment of the underlying debt where it had no funds in its hands payable to the debtor at the time of the garnishment.[7]

{¶ 10} In this case, NASB's argument is that it had no funds in its possession payable to Yoder at the time that Lighting served its garnishment. (Admittedly, NASB's answer could have been more clear in its drafting to emphasize this point.) According to NASB, under the terms of the construction-loan agreement with its borrowers, Michael and Andrea Huntsman, it had the right to directly discharge any lien or pay any contractor or subcontractor from the unexpended portion of the loan proceeds.[8] NASB had the authority under the contract to issue checks directly to these subcontractors.

{¶ 11} It appears to this court that Yoder would have a right to the funds in NASB's construction-loan account only if there was no money owed to subcontractors. Otherwise, he would have no right to the cash. At least one Ohio court has held that "funds held in escrow are not subject to garnishment except where all conditions of the escrow have been completed and the funds without dispute are due to the judgment debtor." [9] Lighting's motion for contempt is therefore overruled.

---

5. *Mascon Equip. & Supply Co. v. Ohio Farmers Ins. Co.* (Sept. 29, 2006), Stark App. No. 2006CA00066, 2006 WL 2947364.

6. See *First Bank of Marietta v. Mascrete, Inc.* (1998), 125 Ohio App.3d 257, 263, 708 N.E.2d 262.

7. *Bank One of Columbus, N.A. v. Lake States Cartage* (Hardin C.P.1985), 30 Ohio Misc.2d 22, 24, 30 OBR 286, 506 N.E.2d 1234.

8. See Exhibit B (November 15, 2007 letter from attorney Niekamp to Yoder), to NASB's response to plaintiff's motion.

9. *Cent. Natl. Bank v. Broadview S. & L. Co.* (1979), 64 Ohio App.2d 133, 140, 18 O.O.3d 101, 411 N.E.2d 840.

{¶ 12} The court likewise overrules NASB's motion for sanctions and attorney fees. The court finds that Lighting's arguments that the funds held by NASB were subject to garnishment are in no way farfetched. In fact, an argument could be made that NASB created unnecessary confusion to the circumstances by promising to hold the funds in a suspense account until the matter was determined.

So ordered.